**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOHN R. BEHRMANN; NANCY
BEHRMANN; HIGHBOURNE
FOUNDATION; MAURICE TOWNSLEY;
THERESA TOWNSLEY; TOWNSLEY
FAMILY FOUNDATION, THE; DOLORES
F. ANDERSON, a/k/a Dodie
Anderson; DODIE ANDERSON
FOUNDATION,

   *Plaintiffs-Appellants,*

     v.

NATIONAL HERITAGE FOUNDATION,
INCORPORATED; OFFICIAL
COMMITTEE OF UNSECURED
CREDITORS,

   *Defendants-Appellees.*

No. 10-2015

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Senior District Judge.
(1:10-cv-00040-CMH-IDD)

Argued: September 20, 2011

Decided: December 9, 2011

Before TRAXLER, Chief Judge, and AGEE and DIAZ,
Circuit Judges.

Vacated and remanded by published opinion. Judge Diaz wrote the opinion, in which Chief Judge Traxler and Judge Agee joined.

---

**COUNSEL**

**ARGUED:** Glenn W. Merrick, G. W. MERRICK & ASSOCIATES, LLC, Greenwood Village, Colorado, for Appellants. Erika Lynn Morabito, PATTON BOGGS, LLP, Washington, D.C., for Appellees. **ON BRIEF:** Gregory H. Counts, TYLER, BARTL, RAMSDELL & COUNTS, PLC, Alexandria, Virginia, for Appellants.

---

**OPINION**

DIAZ, Circuit Judge:

We consider in this case the circumstances under which a bankruptcy court may approve nondebtor release, injunction, and exculpation provisions as part of a final plan of reorganization under Chapter 11 of the Bankruptcy Code.

We hold that equitable relief provisions of the type approved in this case are permissible in certain circumstances. A bankruptcy court must, however, find facts sufficient to support its legal conclusion that a particular debtor's circumstances entitle it to such relief. Because the bankruptcy court in this case failed to make such findings, the district court erred in affirming the bankruptcy court's confirmation order. Accordingly, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

I.

Appellee National Heritage Foundation ("NHF") is a non-

profit public charity that administers and maintains Donor-Advised Funds ("DAFs").[1] Appellants John R. Behrmann, Nancy Behrmann, the Highbourne Foundation, Dolores F. Anderson, and the Dodie Anderson Foundation are among the more than 9000 donors that established DAFs to be administered by NHF.

Following a state court judgment of over six million dollars entered against NHF in Texas, NHF filed a voluntary petition in the U.S. Bankruptcy Court for the Eastern District of Virginia, seeking to reorganize under Chapter 11 of the Bankruptcy Code. NHF notified its donors and other parties in interest, including Appellants, of the deadline for filing proofs of claim in its bankruptcy proceeding.

As part of its reorganization plan, NHF proposed three categories of unsecured claims: Class III(A), consisting of a claim by the Mancillas family, the holder of the Texas state court judgment; Class III(B), consisting of claims held by NHF's charitable gift annuitants; and Class III(C), consisting of all other general unsecured claims. Although NHF contended that its donors were not creditors, it provided that a donor's claim would be treated as an unsecured Class III(C) claim provided that the claim was allowed.[2]

---

[1]DAFs are funds that are owned and controlled by a sponsoring charitable organization that separately identifies contributions made by donors. 26 U.S.C. § 4966(d)(2). Donors may make non-binding recommendations regarding how their donations are invested or distributed, but otherwise relinquish all right and interest in the donated assets.

[2]The bankruptcy court ultimately dismissed the claims of Appellants Dolores F. Anderson and the Dodi Anderson Foundation as untimely. The district court affirmed and the dismissal has likewise been affirmed by this court. *Anderson v. Nat'l Heritage Found., Inc.*, No. 10-2186, 2011 WL 2745764 (4th Cir. July 13, 2011). The bankruptcy court overruled NHF's objection to the Behrmann claims, determining that the Behrmanns may have stated claims for rescission under 11 U.S.C. § 101(5). The Behrmanns, however, subsequently withdrew their claims.

NHF's proposed plan of reorganization also included certain release, injunction, and exculpation provisions (collectively, the "Release Provisions") that prevented potential claimants from asserting claims against NHF, the Official Committee of Unsecured Creditors (the "Committee"), and other parties closely connected with NHF or the Committee, such as NHF's officers and directors, that accrued on or before the effective date of the reorganization plan. At a hearing before the bankruptcy court, NHF representative Janet Ridgely testified that the Release Provisions were essential to NHF's successful reorganization as a going concern. Specifically, Ridgely asserted that (1) NHF's proposed plan of reorganization and bylaws required NHF to indemnify its officers and directors for costs, expenses, and liabilities arising out of lawsuits filed against them relating to acts taken in their official capacities; (2) NHF's officers and directors were concerned about the possibility of protracted litigation against them relating to acts predating NHF's petition for bankruptcy, and in particular litigation initiated by donors; (3) NHF's officers and directors might be unwilling to continue to serve after confirmation of NHF's proposed plan of reorganization if third parties could sue them for their pre-petition conduct; and (4) retaining NHF's officers and directors was essential to NHF's success as a reorganized debtor. The bankruptcy court, however, declined to approve the Release Provisions, concluding that they were overly broad.

NHF's counsel subsequently filed revisions to the Release Provisions that (1) narrowed the definition of "Released Parties" to include only NHF, the Committee, any designated representatives of the Committee, and any officers, directors, or employees of NHF, the Committee, or their successors and assigns (the "Released Parties"); (2) exculpated the Released Parties only with respect to claims brought by parties in interest that had filed a proof of claim or were given notice of NHF's bankruptcy proceeding, and then only for acts or omissions arising out of the operation of NHF's business through the effective date of the reorganization plan; and (3) explicitly

provided that no parties would be released from liability stemming from NHF's failure to comply with its obligations under the reorganization plan. Following argument, the bankruptcy court approved the Release Provisions as amended and confirmed NHF's plan of reorganization (hereafter, the "Confirmed Plan").

In its written order, the bankruptcy court found that the Release Provisions were (1) "essential" to NHF's reorganization and appropriate given NHF's "unique circumstances"; (2) an "essential means" of implementing the Confirmed Plan; (3) an "integral element" of the transactions contemplated in the Confirmed Plan; (4) a "material benefit" for NHF, its bankruptcy estate, and its creditors; (5) "important" to the Confirmed Plan's overall objectives; and (6) consistent with applicable provisions of the Bankruptcy Code. J.A. 886-87.

The bankruptcy court's order also adopted all oral findings of fact made on the record during the two days of confirmation hearings. These findings included that (1) NHF's bankruptcy was "quite a unique case," *id.* 1375; (2) there were "legitimate interests" for approving the Release Provisions in the reorganization plan, *id.* 1382; (3) the "potential for mischief" was "very, very high" for a dissatisfied party whose claim was disallowed in the bankruptcy proceeding to sue NHF's officers and directors "seriatim," *id.* 1383-84; (4) NHF's obligations to indemnify its officers and directors could cause it to incur substantial legal costs in defending such claims; and (5) the Release Provisions served the purpose of "preventing an end-run around the plan" by not allowing dissatisfied claimants to attempt "second and third bites at the apple in another forum," *id.* 1416.

Appellants thereafter appealed to the district court and also moved for a stay of enforcement of the Release Provisions, which the bankruptcy court granted through the pendency of the first level of review before the district court. The district court affirmed the confirmation order. Appellants timely

appealed to this court, and moved before the bankruptcy court for a limited stay pending appeal, which the court denied because it no longer had jurisdiction. Appellants then moved before the district court for a stay, which the district court also denied.

## II.

The parties articulate differing standards of review. Appellants claim that whether the Confirmed Plan satisfies the requirements of the Bankruptcy Code (to include whether the plan was proposed in good faith) and whether the Release Provisions are permissible present questions of law that are reviewed de novo. NHF responds that, however framed by Appellants, the ultimate issue in this case is the propriety of the bankruptcy court's approval of the Release Provisions. NHF argues that such a decision implicates a bankruptcy court's equitable powers, and that it is well established that a court's grant or denial of equitable relief is reviewed for abuse of discretion.

As to Appellants' claim that the Confirmed Plan was not proposed in good faith, and thereby fails to satisfy the requirements of the Bankruptcy Code, the standard of review is well settled: a court's finding with respect to the good faith requirement imposed under 11 U.S.C. § 1129(a)(3) is reviewed for clear error. *In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000); *accord Schwarzmann v. First Union Nat'l Bank (In re Schwarzmann)*, No. 95-2512, 1996 WL 698072, at *4 (4th Cir. Dec. 6, 1996) (stating that the factual findings of the bankruptcy court, including a finding of good faith under § 1129(a)(3), are subject to a "clearly erroneous" standard of review).

We need not resolve the separate question of which standard of review governs the bankruptcy court's approval of the Release Provisions. Instead, we conclude that a remand is necessary because the bankruptcy court's failure to make suf-

ficient factual findings in support of its legal conclusions does not allow for meaningful appellate review under any standard.

## III.

## A.

Before we address the deficiencies in the bankruptcy court's confirmation order, we first consider (and reject) Appellants' broadside contention that the Confirmed Plan fails to satisfy the requirements of the Bankruptcy Code.

Confirmation of a Chapter 11 plan of reorganization requires that the plan satisfy all of the confirmation criteria set forth in 11 U.S.C. § 1129(a). *In re Byrd Foods, Inc.*, 253 B.R. 196, 199 (Bankr. E.D. Va. 2000). Appellants argue that the Confirmed Plan fails this basic requirement because (1) the Plan was not proposed in good faith, in contravention of 11 U.S.C. § 1129(a)(3), and (2) 11 U.S.C. § 524(e)—providing in pertinent part that "discharge of a debt of the debtor does not affect the liability of any other entity on . . . such debt"—forecloses approval of the Release Provisions.

On the question of NHF's good faith in proposing the Confirmed Plan, Appellants essentially contend that the Chapter 11 filing was a sham perpetrated by NHF's officers and directors to secure immunity for their fraudulent and misleading conduct in soliciting donations for DAFs and in administering those funds. Appellants claim that the Confirmed Plan "evidences a concentrated effort by the Houk family [whose members largely comprise NHF's officers and directors] to extend to itself comprehensive clemency . . . in respect of reprehensible and tortious practices." Appellants' Br. 16.

Here, however, the bankruptcy court specifically examined the totality of the circumstances surrounding the formulation of the plan and NHF's negotiations with the Committee and holders of claims against NHF, all objections filed and

responses thereto, and all other evidence presented during the two days of confirmation hearings. The bankruptcy court concluded specifically that NHF was a "debtor" as that term is defined under the Code and that it "filed its case and proposed its Plan with the legitimate and honest purpose of reorganizing and maximizing both the value of [NHF's] Estate and the recovery to Claimants." J.A. 881. Because Appellants have not shown that the bankruptcy court clearly erred with respect to this finding, we reject their contention that the Confirmed Plan fails to satisfy the good faith requirement.

As to Appellants' second broad challenge to the Confirmed Plan, we have rejected the notion that 11 U.S.C. § 524(e) forecloses bankruptcy courts from releasing and enjoining causes of action against nondebtors. *See Menard-Sanford v. Mabey (In re A.H. Robins Co.)*, 880 F.2d 694 (4th Cir. 1989) [hereinafter *A.H. Robins*]. *A.H. Robins* involved a reorganization necessitated by a mass tort suit arising from the use of the Dalkon Shield intrauterine device. In that case, the appellants sought to sue the debtor's directors and attorneys as joint tortfeasors, but we permitted the bankruptcy court to enjoin these suits on grounds of equity. We noted, "11 U.S.C. § 105(a) gives a bankruptcy court the power to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title, and confers equitable powers upon the bankruptcy courts." *Id.* at 701 (internal quotations omitted).

We declined to retreat from this holding in *Stuart v. First Mount Vernon Indus. Loan Ass'n*, 3 F. App'x 38 (4th Cir. 2001), stating as follows:

> In *A. H. Robins*, we determined that section 524(e) does not deny the bankruptcy court the power to release liabilities of a non-debtor under the terms of a Chapter 11 plan when the creditors of the non-debtor approved of and accepted the terms of the plan. We recognize that there are decisions to the contrary in other circuits, but we reject First Mount

> Vernon's implication that we should abandon our precedent.

*Id.* at 42 (citations and internal quotations omitted); *accord In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 293 (2d Cir. 1992) (upholding an injunction against creditors from suing a third party, given that the injunction played an important part in the debtor's reorganization); *In re Railworks Corp.*, 345 B.R. 529, 536 (Bankr. D. Md. 2006) (holding that a release provision enjoining the commencement of actions against nondebtors was enforceable even though "broad in nature"). Thus, Appellants' blanket assertion that equitable relief in the form of nondebtor releases is never permissible under the Bankruptcy Code is also without merit.

## B.

Next, we address whether—on this record—the bankruptcy court erred in entering an order approving the Release Provisions as part of the Confirmed Plan, and the district court erred in affirming that order insofar as it included the Release Provisions. Appellants contend that the Release Provisions far exceed the narrow limits that courts have drawn in this area. In support of that contention, Appellants direct us first to our decision in *A.H. Robins*, where we approved a bankruptcy court's decision to enjoin third party suits in favor of a "channeling" injunction that required claimants to assert their tort claims against a $350 million trust res established by the debtor's insurers, 880 F.2d at 701.

According to Appellants, however, we did so only after finding that (1) the parties who benefited from the injunction (the debtor's insurers) had all contributed funds sufficient to fully satisfy all claims asserted against the debtor; (2) the reorganization plan afforded all parties, including those with late-filed claims, a chance to be paid in full from the trust res; (3) the injunction was necessary to prevent suits against parties whose contribution rights against the debtor would defeat

the prospects of a successful reorganization; and (4) the affected class of claimants voted overwhelmingly in favor of the proposed reorganization plan.

In contrast, Appellants contend that (1) the beneficiaries of the Release Provisions, NHF's officers and directors, have not contributed any funds to NHF's reorganization; (2) the plan does not afford recovery for late-filed claims, as evidenced by NHF's objection to the claim asserted by Appellant Anderson on the ground that it was filed four months after the bar date; (3) the Release Provisions do not promote the purpose of a successful reorganization because continuation of NHF's operations is not necessary for a successful reorganization, especially because there is no evidence that the service of NHF's present officers and directors is necessary to NHF's continued operations; and (4) the affected class of claimants did not overwhelmingly favor the Confirmed Plan, as Appellants—and all other potential Class III(C) creditors—were barred from voting on the plan because they were classified as "unimpaired."

In our view, however, a bankruptcy court need not find a precise fit between the circumstances found in *A.H. Robins* and the case before it as a precondition to granting equitable relief. Rather, whether a court should lend its aid in equity to a Chapter 11 debtor will turn on the particular facts and circumstances of the case, and our decision in *A.H. Robins* is not to the contrary.

Appellants also look to decisions from other circuits holding that nondebtor releases are appropriate only in very limited circumstances. First, Appellants note the Second Circuit's observations that the only authority in the Bankruptcy Code for nondebtor releases is 11 U.S.C. § 524(g), which is limited to channeling injunctions in asbestos cases, and that nondebtor releases pose a "potential for abuse" that "is heightened when releases afford blanket immunity," *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber*

*Network, Inc.)*, 416 F.3d 136, 142 (2d Cir. 2005). The Appellants also cite *Alradigm Commc'ns, Inc. v. FCC (In re Alradigm Commc'ns, Inc.)*, 519 F.3d 640, 657 (7th Cir. 2008), in which the Seventh Circuit denounced nondebtor releases that provided "blanket immunity" for pre- and post-petition conduct and omissions. Finally, Appellants cite various other circuit and bankruptcy court cases for the proposition that only unique or unusual circumstances can justify approval of nondebtor releases. Appellants' Br. 20 (collecting cases). We have reviewed these cases and find nothing therein inconsistent with our conclusion that a bankruptcy court is authorized to approve equitable relief in the form of the Release Provisions where circumstances warrant.

Appellants next direct our attention to the seven-factor test found in *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648 (6th Cir. 2002), arguing that bankruptcy courts frequently employ it to determine if nondebtor releases are necessary and fair. In pertinent part, the opinion states as follows:

> We hold that when the following seven factors are present, the bankruptcy court may enjoin a non-consenting creditor's claims against a non-debtor: (1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (2) The non-debtor has contributed substantial assets to the reorganization; (3) The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor; (4) The impacted class, or classes, has overwhelmingly voted to accept the plan; (5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; (6) The

plan provides an opportunity for those claimants who choose not to settle to recover in full and; (7) The bankruptcy court made a record of specific factual findings that support its conclusions.

*Id.* at 658 (citing, inter alia, *A.H. Robins*, 880 F.2d at 701-02). Appellants argue that the Release Provisions fail every prong of this test and vastly exceed the scope of releases that have been permitted in prior cases.

NHF responds that a party need not satisfy a specific test or present evidence in support of specific findings for such provisions to be upheld. Alternatively, NHF contends that the following, narrower set of factors provides the proper framework for a bankruptcy court to consider in deciding whether to approve nondebtor releases: (1) overwhelming approval for the plan; (2) a close connection between the causes of action against the third party and the causes of action against the debtor; (3) that the injunction is essential to the reorganization; and (4) that the plan of reorganization provides for payment of substantially all of the claims affected by the injunction. Appellee's Br. 25-26 (citing *In re Railworks Corp.*, 345 B.R. at 536). NHF claims that the Release Provisions satisfy each of these factors.

### C.

We find the *Dow Corning* and *In re Railworks Corp.* factors instructive and so commend them to a bankruptcy court when considering whether to approve nondebtor releases as part of a final plan of reorganization. That said, we agree with Appellants that approval of nondebtor releases in this context should be granted cautiously and infrequently. *See Deutsche Bank AG*, 416 F.3d at 142 ("No case has tolerated nondebtor releases absent the finding of circumstances that may be characterized as unique."); *Dow Corning*, 280 F.3d at 657-58 ("[S]uch an injunction is a dramatic measure to be used cautiously . . . ."); *Gillman v. Cont'l Airlines (In re Cont'l Air-*

*lines)*, 203 F.3d 203, 212-213 (3d Cir. 2000) (recognizing that nondebtor releases have been approved only in "extraordinary cases"). Thus, while we are satisfied to leave to a bankruptcy court the determination of which factors may be relevant in a specific case, the meaningful exercise of appellate review at a minimum requires that the court make specific factual findings in support of its decision to grant equitable relief.

In this case, although the bankruptcy court did not explicitly state that it was applying the *Dow Corning* factors, it clearly considered the case in deciding whether to approve the Release Provisions. We find, however, that the bankruptcy court's ultimate decision to grant equitable relief lacks adequate factual support. Put simply, to conclude, as the bankruptcy court did, that the Release Provisions (1) were "essential" to NHF's reorganization and appropriate given NHF's "unique circumstances"; (2) were an "essential means" of implementing the confirmed plan; (3) were an "integral element" of the transactions contemplated in the Confirmed Plan; (4) conferred a "material benefit" on NHF, its bankruptcy estate and its creditors; (5) were "important" to the plan's overall objectives; and (6) were "consistent" with applicable provisions of the Bankruptcy Code, is meaningless in the absence of specific factual findings explaining why this is so. Indeed, without more, the court's conclusions could apply just as well to any number of reorganizing debtors. Because the present record does not allow us to assess-–under any standard of review—whether NHF's circumstances entitle it to the benefit of the Release Provisions, we must vacate the district court's judgment and remand the case to allow the bankruptcy court—if the record permits it—to set forth specific factual findings supporting its conclusions.

## IV.

We turn next to NHF's contention that the appeal should be dismissed as equitably moot.[3] Specifically, NHF argues that

---

[3]Ordinarily, we would address this procedural question before turning to the merits. In this case, however, "[b]ecause equitable mootness bears

it has substantially consummated the Confirmed Plan and relied on its finality and that Appellants should be foreclosed from relief because they failed to stay the distributions under the Confirmed Plan. We have recognized that "[t]he doctrine of equitable mootness represents a pragmatic recognition by courts that reviewing a judgment may, after time has passed and the judgment has been implemented, prove 'impractical, imprudent, and therefore inequitable.' " *Retired Pilots Ass'n of US Airways, Inc. v. US Airways Grp., Inc. (In re US Airways Grp., Inc.)*, 369 F.3d 806, 809 (4th Cir. 2004) (quoting *MAC Panel Co. v. Va. Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002)). In the bankruptcy context, a court "may dismiss an appeal as equitably moot 'when it becomes impractical and imprudent to upset the plan of reorganization at [a] late date.'" *Id.* (quoting *MAC Panel Co.*, 283 F.3d at 625).

We look to the following factors to determine whether an appeal should be dismissed because it is equitably moot:

> (1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties.

*Id.* Here, NHF contends that all of the factors favor dismissal of the appeal.

Appellants do not contest that NHF substantially consummated the Confirmed Plan by distributing approximately $20

only upon the proper remedy, and does not raise a threshold question of our power to rule, a court is not inhibited from considering the merits before considering equitable mootness." *Deutsche Bank AG*, 416 F.3d at 144.

million of estate assets to holders of allowed claims on November 12, 2009, more than a month before Appellants docketed their appeal to the district court, and almost a year before they docketed their appeal to this court. Instead, they argue that substantial consummation alone is insufficient to moot an appeal from an order of confirmation.

Without endorsing Appellants' contention that substantial consummation is alone insufficient, we find that the balance of factors does not support dismissal of the appeal. First, Appellants sought and obtained a stay, although limited in scope, and then were rebuffed in their efforts to obtain a further stay pending appeal.

NHF has also failed to demonstrate how the relief requested by Appellants would jeopardize the success of the Confirmed Plan. On this point, NHF argues that it could incur substantial litigation costs in defending its directors and officers against claims brought by dissatisfied donors that would threaten its ability to continue operations. However, here NHF merely parrots certain conclusions of the bankruptcy court, for example, that the Release Provisions are "important to the overall objectives of the Plan," J.A. 887, and we have already noted that such conclusions lack adequate factual support. We also note that the Confirmed Plan expressly provides that any clause may be severed should it be determined to be unenforceable, which suggests that the plan would remain viable absent the Release Provisions.

Finally, NHF never explains how third-party interests would be affected by the relief sought, merely articulating potential harm that the organization itself might incur. By contrast, in *Retired Pilots Ass'n of US Airways*, the reorganized debtor had entered into countless transactions with third parties, including the securing of loans from lenders. There we found that if a central provision of the reorganization plan was unwound, such action would likely effect a great harm on these third parties. 369 F.3d at 810. On this record, we are

unable to find that the interests of third parties would be affected by the relief requested by Appellants.

In sum, we decline to exercise our discretion to dismiss this appeal as equitably moot.

## V.

For the foregoing reasons, we vacate the judgment of the district court and remand this case with instructions to the district court to remand it to the bankruptcy court for further proceedings consistent with this opinion.

*VACATED AND REMANDED*